61. Neither Columbia Advisors nor Columbia Distributor disclosed to the investors or to the independent trustees of the Columbia Funds the arrangement with Waldbaum or Waldbaum's trading in the Columbia Funds.

## I.   *Tandem's Arrangement and Trading*

62. By early 2000, Tandem Financial ("Tandem"), an investment adviser, entered into an arrangement with Columbia Distributor, which was approved by its Senior Vice President. The arrangement permitted Tandem to make an unlimited number of trades in one or more of the Columbia Funds. Overall, pursuant to this arrangement, during the period from February 2000 through September 2003, Tandem made more than 100 round trips in the Tax Exempt Fund.

63. During 2000, Tandem made approximately eleven round trips in the Tax-Exempt Fund. Starting in April 2001, the prospectus for the Tax Exempt Fund prospectus included the Strict Prohibition disclosure. Despite the disclosure, Tandem made 106 round trips during the period from April 2001 through September 2003.

64. Neither Columbia Advisors nor Columbia Distributor disclosed to the investors and independent trustees of the Columbia Funds the arrangement with Tandem or Tandem's trading in the Columbia Funds.

## Columbia Advisors Knew of and Acquiesced In the Short-Term or Excessive Trading Arrangements Negotiated by Columbia Distributor

65. As reflected by internal e-mails, several Columbia Advisors portfolio managers (including those for the Growth Stock Fund, the Newport Tiger Fund, the High Yield Fund, the Young Investor Fund, and the Tax Exempt Fund, one of whom was also the Chief Investment

20

Officer for International Equities), knew of and acquiesced in arrangements, negotiated by

Columbia Distributor, allowing excessive or short-term trading of their own funds, even though

these arrangements were often contrary to the express representations in the funds' prospectuses.

In addition, the senior executive at Columbia Advisors responsible for Columbia Advisors'

advisory activity during the period from 1998 through late 2001 was aware of at least one of

these arrangements.  Further, several senior executives were aware that there was short-term or

excessive trading in the Columbia Funds and aware of the concerns voiced by the portfolio

managers, among others, about the potential negative impact this trading could have on the

funds.

### Defendants Knew That Short-Term or Excessive Trading Harmed or Created a Risk of Harm to the Funds

66.     Many of the Columbia Funds' portfolio managers, a number of Columbia

Distributor executives, and each of the senior executives responsible for Columbia Advisors'

advisory activity during the period from 1998 to 2003, knew or recklessly disregarded that short-

term or excessive trading caused potential or actual harm and disruption to the Columbia Funds.

For example:

(a)     By the beginning of 2000, Columbia Distributor's Senior Vice President expressed concern about the potentially harmful effect that Calugar's frequent trading was having on the relevant Columbia Funds.

(b)     In the spring of 2000, shortly after the peak of Calugar's trading in the Stein Roe International Fund, the fund's liaison with Columbia Distributor sent an e-mail to the heads of Columbia Advisors, Columbia Distributor and Columbia Services with a chart that he summarized as showing: "for the last 6 weeks . . . $142,018,026 has gone into the Fund and $134,935,372 has gone out. . . .These figures exceed the total size of the Fund!" He continued, "My goal here is to increase awareness of the magnitude of this problem and to get everyone involved working on a solution on a timely basis."

21

(c)    In August 2000, in an e-mail discussing Ilytat, the portfolio manager for the Newport Tiger Fund, complained about market timers to the head of Columbia Advisors and the President of Columbia Distributor, stating : "Their active trading has increased and it has become unbearable.  There will be long term damage to the fund." He further noted, "Let's understand that they [timers] really are not investors.  They take advantage of the fund's delayed pricing mechanism which almost guarantees a risk free return . . . I hope wholesalers understand that by accepting a flipper's [*i.e.,* a short-term trader's] investment they do damage to the fund's performance, tax status, and the other shareholders (their clients)."

(d)    In March 2001, in another e-mail sent to the head of Columbia Advisors and to the President of Columbia Distributor, the Tiger Fund portfolio manager stated that "Newport. . .and the fund's long-term shareholders are all negatively impacted by flippers." He suggested that action be taken.  The portfolio manager spoke directly with the heads of Columbia Advisors, Columbia Distributor and Columbia Services about market timing issues, including his concerns about the negative impact on his funds that frequent movements of large amounts of cash in and out of the fund could have, making it difficult to mange the funds. The portfolio manager also spoke with the CEO of their common parent, Columbia Management Group, about the concerns created by this short-term trading.

(e)    In July 2002, the portfolio manager for the Tiger Variable Fund experienced a problem with excess cash redemptions.  The President of Columbia Services wrote to the President of Columbia Distributor informing him that the fund was "still being plagued by market timers," and specifically stating that "The timers are impacting [the portfolio manager's] ability to manage this fund, and likewise, impacting shareholders."

(f)    In September 2002, Columbia Services reported to Columbia Distributor's Managing Director that, "Despite the tools currently available to us, timers continue to disrupt fund performance and management as well as exaggerate sales figures."

Notwithstanding the concerns raised about the impact this excessive or short-term trading was having on the relevant Columbia Funds, Columbia Advisors and Columbia Distributor continued to allow such trading to take place.

22

## Columbia Distributor Interfered With Efforts to Halt Short-Term or Excessive Trading

67.     Columbia Distributor recognized its obligation to act consistently with fund disclosure prohibiting short-term or excessive trading, and professed to want to prevent short-term or excessive traders from investing in the Columbia Funds.   In fact, however, on multiple occasions, Columbia Distributor executives and employees blocked efforts to halt their clients' trading activity.  For example:

(a)     In 2000, a Columbia Distributor sales executive halted efforts to stop Giacalone from making almost daily round trips in the Newport Tiger Fund.  Although the Giacalone accounts were subsequently shut down, Columbia Distributor's interference delayed the process and allowed a substantial number of additional trades to be made.

(b)     In March 2001, Columbia Distributor's Senior Vice President intervened when a portfolio assistant to the Acorn International Fund had telephoned the broker responsible for the Ilytat account and asked him to stop Ilytat from violating the fund's short-term trading policy.  The Columbia Distributor executive caused the Columbia Services manager responsible for market timing to telephone the portfolio assistant and tell her that it was "inappropriate" for her to take any direct steps to halt Ilytat's trading.

(c)     By March 2001, with the acquiescence of Columbia Distributor's Senior Vice President, Ilytat had been placed on a list of "Authorized Accounts for Frequent Trading," a list of accounts maintained by Columbia Services against which no action was to be taken, however frequent their trading.

(d)     In December 2001, Columbia Distributor's Senior Vice President intervened when the portfolio manager for Acorn International Fund complained about Ilytat's market timing adversely impacting her fund and tried to halt it.  Ilytat was allowed to continue trading.

(e)     In 2002, Columbia Distributor's Managing Director for National Accounts personally intervened to reverse a stop placed on Ilytat's trading by Columbia Services market timing surveillance personnel.  Ilytat continued trading for almost three more months thereafter.

(f)     In January 2003, a Columbia Distributor sales manager insisted that no restrictions be placed on trading by Waldbaum because of the trading arrangement with him.

23

(g)    In early 2003, a sales manager at Columbia Distributor intervened when Columbia Services sought to block Tandem from making any more trades in the Tax-Exempt Fund.  She wrote to the Columbia Services market surveillance manager, "Tandem Fin'l . . . are[sic] an advisor that we have a very close relationship with.  We definitely do not want to restrict them," and further stated that "there are certain relationships like Tandem that are allowed to time based on prior discussions."  As a result of this intervention, Tandem was allowed to continue trading in the Tax Exempt Fund up through October 2003.

(h)    In March 2003, a Columbia Distributor executive intervened to allow Signalert to trade in the Columbia High Yield fund, despite a previous bar for excessive trading.

## Columbia Advisors and Columbia Distributor Benefited from Short-Term or Excessive Trading

68.    Both Columbia Advisors and Columbia Distributor benefited directly from the short-term trading arrangements.  Because Columbia Advisors received advisory fees based on the total assets under management in the funds for which it acted as adviser, it served Columbia Advisors' financial interest to obtain the largest possible investment in a fund.  Indeed, in an e-mail, Columbia Distributor's Managing Director set forth certain "guidelines" for entering short-term trading arrangements requiring, *inter alia*, that the investor place non-trading assets in Columbia Funds, to ensure a "constant management fee income."

69.    Columbia Distributor earned revenue and its executives were compensated based on the total amount of assets they caused to be invested in the funds.  As a result, it was also in Columbia Distributor's financial interest to do what was necessary to persuade short-term traders to place money in the funds.

24

**FIRST CLAIM**
**(Defendants Columbia Advisors and Columbia Distributor)**
**Fraud in the Purchase or Sale of Securities in Violation of**
**Exchange Act § 10(b) and Rule 10b-5**

70.    Plaintiff Commission repeats and realleges paragraphs 1 through 69 above.

71.    Columbia Advisors and Columbia Distributor, directly or indirectly, acting

knowingly or recklessly, in connection with the purchase or sale of securities, by the use of

means and instrumentalities of interstate commerce, or of the mails, or a facility of a national

securities exchange: (a) have employed or are employing devices, schemes or artifices to defraud;

(b) have made or are making untrue statements of material fact or have omitted or are omitting to

state a material fact necessary to make the statements made, in the light of the circumstances

under which they were made, not misleading; and (c) have engaged or are engaging in acts,

practices or courses of business which operate as a fraud or deceit upon certain persons, in

violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §

240.10b-5] thereunder.

72.    The conduct of Columbia Advisors and Columbia Distributor involved fraud,

deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial

loss, or significant risk of substantial loss, to other persons.

**SECOND CLAIM**
**(Defendants Columbia Advisors and Columbia Distributor)**
**Fraud in the Offer or Sale of Securities in Violation of**
**Exchange Act § 17(a)**

73.    Plaintiff Commission repeats and realleges paragraphs 1 through 72 above.

74.    Columbia Advisors and Columbia Distributor, directly and indirectly, in the offer or sale of securities by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails: (a) acting knowingly or recklessly, have employed or are employing devices, schemes or artifices to defraud; (b) have obtained or are obtaining money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) have engaged or are engaging in transactions, practices or courses of business which operate as a fraud or deceit upon purchasers of the securities, in violation of § 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM
### (Defendants Columbia Advisors and Columbia Distributor)
### Joint Arrangement in Violation of
### Section 17(d) of the Investment Company Act and Rule 17d-1 Thereunder

75.    Plaintiff Commission repeats and realleges paragraphs 1 through 74 above.

76.    Each of the Columbia Funds was a registered investment company.

77.    Columbia Advisors, which was the investment adviser for the Columbia Funds, and Columbia Distributor, which was the principal underwriter for the Columbia Funds, are and were affiliates of the Columbia Funds.

78.    Columbia Advisors and Columbia Distributor effected transactions in which certain of the Columbia Funds were joint participants with Columbia Advisors and Columbia Distributor, in contravention of rules and regulations the Commission has prescribed for the purpose of limiting or preventing participation by registered companies, such as the Columbia Funds, on a basis different from or less advantageous than that of such other participants.

26

79.    Columbia Advisors and Columbia Distributor participated in such joint arrangements even though the Commission did not grant an exemption from the statutory prohibitions (pursuant to the filing of an application, or otherwise) with respect to such joint enterprises or arrangements.

80.    As a result, Columbia Advisors and Columbia Distributor violated § 17(d) of the Investment Company Act and Rule 17d-1 thereunder [15 U.S.C. § 80a-17(d) and 17 C.F.R. § 270.17d-1].

## FOURTH CLAIM
### (Defendant Columbia Advisors)
### Fraud by an Investment Adviser in Violation of
### Sections 206(1) and 206(2) of the Advisers Act

81.    Plaintiff Commission repeats and realleges paragraphs 1 through 80 above.

82.    Columbia Advisors was an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

83.    Columbia Advisors, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:  (a) acting knowingly or recklessly, has employed devices, schemes, or artifices to defraud; or (b) has engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon a client or prospective client.

84.    As a result, Columbia Advisors has violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)].

## FIFTH CLAIM
### (Defendant Columbia Distributor)
### Aiding and Abetting Columbia Advisors' Violations of
### Sections 206(1) and 206(2) of the Advisers Act

85.    Plaintiff Commission repeats and realleges paragraphs 1 through 84 above.

86.     Columbia Advisors' conduct as alleged herein violated §§ 206(1) and 206(2) of the Advisers Act.

87.     Columbia Distributor knew or recklessly disregarded that Columbia Advisors's conduct was improper and it knowingly rendered to Columbia Advisors substantial assistance in this conduct.

88.     As a result, Columbia Distributor aided and abetted Columbia Advisors' violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)].

## SIXTH CLAIM
### (Defendant Columbia Advisors)
### Fraudulent Disclosure in Investment Company Filings in Violation of
### Section 34(b) of the Investment Company Act

89.     Plaintiff Commission repeats and realleges paragraphs 1 through 88 above.

90.     Columbia Advisors made untrue statements of a material fact or omitted to state facts necessary in order to prevent statements it made, in the light of the circumstances under which they were made, from being materially misleading in registration statements, applications, reports, accounts, records, or other documents filed with the Commission or the keeping of which is required by registered investment companies.

91.     As a result, Columbia Advisors violated Section 34(b) of the Investment Company Act [15 U.S.C. § 80a-33].

## SEVENTH CLAIM
### (Defendant Columbia Distributor)
### Fraud by Broker or Dealer in Violation of
### Section 15(c) of the Exchange Act

92.     Plaintiff Commission repeats and realleges paragraphs 1 through 91 above.

28

93.    During the period from early 1998 through August 2003, Columbia Distributor was a broker or dealer as those terms are defined by Section 3(a)(4) and (5) of the Exchange Act [15 U.S.C. § 78c(a)(4),(5)].

94.    During the period from early 1998 through August 2003, Columbia Distributor, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, acting knowingly or recklessly, effected transactions in, or induced or attempted to induce the purchase or sale of securities (otherwise than on a national securities exchange of which it was a member) by means of a manipulative, deceptive, or other fraudulent device or contrivance.

95.    Columbia Distributor disseminated mutual fund prospectuses that made untrue statements of a material fact or omitted to state facts necessary in order to prevent the statements made, in the light of the circumstances under which they were made, from being materially misleading.

96.    As a result, Columbia Distributor violated § 15(c) of the Exchange Act [15 U.S.C. § 78o(c)].

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Commission respectfully requests that this Court issue a Final Judgment:

### I.

Permanently enjoining each of Columbia Advisors and Columbia Distributor from violating, directly or indirectly:

a.    Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

29

b.    Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

c.    Section 17(d) of the Investment Company Act and Rule 17d-1 thereunder [15 U.S.C. § 80a-17(d) and 17 C.F.R. § 270.17d-1]; and

d.    Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)];

## II.

Permanently enjoining Columbia Advisors from violating, directly or indirectly, Section 34(b) of the Investment Company Act [15 U.S.C. § 80a-33(b)];

## III.

Permanently enjoining Columbia Distributor from violating, directly or indirectly, Section 15(c) of the Exchange Act [15 U.S.C. § 78o(c)];

## IV.

Finding that Columbia Advisors breached its fiduciary duty in a manner involving personal misconduct and permanently enjoining Columbia Advisors, pursuant to Section 36(a) of the Investment Company Act [15 U.S.C. § 80a-35(a)], from serving or acting with respect to any registered investment company as an officer, director, member of any advisory board, investment adviser, depositor, or principal underwriter;

## V.

Requiring Columbia Advisors and Columbia Distributor to disgorge their ill-gotten gains related to the violations, as well as prejudgment interest thereon, with said monies and interest to be disbursed in accordance with a plan of distribution to be ordered by the Court;

## VI.

Requiring Columbia Advisors and Columbia Distributor to pay restitution to shareholders harmed by their fraud;

## VII.

Requiring Columbia Advisors and Columbia Distributor to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)] in an amount to be determined by the Court; and

## VIII.

Ordering such other and further relief as this case may require and the Court deems appropriate.

## <u>JURY DEMAND</u>

The Commission hereby demands a trial by jury on all claims so triable.

31

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its attorneys,

Luke T. Cadigan
   Senior Trial Counsel (BBO# 561117)
Celia Moore
   Deputy Asst. Dist. Administrator (BBO# 542136)
Paul Block
   Senior Counsel (BBO# 551158)
David London
   Senior Counsel (BBO# 638289)

73 Tremont Street, Suite 600
Boston, Massachusetts
(617) 424-5900 ext. 203 (Cadigan)
(617) 424-5900 ext. 628 (Block)
(617) 424-5940 (Facsimile)

Dated: February 24, 2004

32